UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ADAM STEUER, individually and on behalf of all others similarly situated, | : | |
| Plaintiff, | : | Civil Action No. 1:26-cv-02038-AT |
| v. | : | CLASS ACTION |
| BARKBOX, INC., | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS


INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 2

LEGAL STANDARD .......... 3

ARGUMENT .......... 3

I. Section 227(c)(5) Does Not Apply to Text Messages. .......... 4

A. The Ordinary Meaning of "Telephone Call" in 1991, When the TCPA Was Enacted, Did Not Encompass Text Messages. .......... 5

B. Other Provisions of the TCPA Confirm that the Term "Telephone Call" in Section 227(c)(5) Does Not Include Text Messages. .......... 8

C. The FCC's Implementing Regulations Cannot Create a Private Right of Action in Section 227(c)(5) for Text Messages. .......... 9

II. Section 227(c) Extends to "Residential Telephone Subscribers," Not Cell Numbers. .......... 11

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alexander v. Sandoval*,
532 U.S. 275 (2001).....10

*Art & Antique Dealers League of Am., Inc. v. Seggos*,
121 F.4th 423 (2d Cir. 2024).....10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).....3

*Barr v. American Association of Political Consultants*,
591 U.S. 610 (2020).....13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....3

*Bethea v. Winfield Sec. Corp.*,
No. 23 CIV. 922 (AT), 2023 WL 8650004 (S.D.N.Y. Dec. 14, 2023).....3

*BP P.L.C. v. Mayor & City Council of Balt.*,
593 U.S. 230 (2021).....5

*Cabrera v. Gov't Employees Ins. Co.*,
452 F. Supp. 3d 1305 (S.D. Fla. 2014).....4

*Cacho v. McCarthy & Kelly LLP*,
739 F. Supp. 3d 195 (S.D.N.Y. 2024).....14

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016).....8

*Cleveland v. Caplaw Enters.*,
448 F.3d 518 (2d Cir. 2006).....3

*Cunningham v. Creative Edge Mktg. LLC*,
No. 4:19-CV-00669-ALM-CAN, 2021 WL 2792353 (E.D. Tex. June 16, 2021).....1, 13, 14

*Cunningham v. Lines*,
No. 15-62580-CIV-MORENO, 2016 WL 7494871 (S.D. Fla. Dec. 29, 2016).....4

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025).....5, 7, 10

*Delaware v. Pennsylvania*,
598 U.S. 115 (2023).........6, 12

*Duran v. La Boom Disco, Inc.*,
955 F.3d 279 (2d Cir. 2020).........7, 8

*El Sayed v. Naturopathica Holistic Health, Inc.*,
No. 8:25-CV-00846-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) .........5

*In re Enf't of Philippine Forfeiture Judgment*,
442 F. Supp. 3d 756 (S.D.N.Y. 2020).........6, 12

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021).........8

*Gager v. Dell Fin. Servs., LLC*,
727 F.3d 265 (3d Cir. 2013).........13

*Gaker v. Q3M Ins. Sols.*,
No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023).........2

*Irvin v. Sonic Indus. Servs., LLC*,
No. 3:25-CV-00242-LMM, 2026 WL 1098403 (N.D. Ga. Apr. 20, 2026).........4, 5

*James v. Smarter Contact, Inc.*,
828 F. Supp. 3d 1367 (M.D. Fla. 2026).........4, 7

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011).........3

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024).........7

*Lopresti v. Nouveau Essentials Mktg. LLC*,
No. 5:25-CV-00282-CEM-PRL, 2026 WL 964758 (M.D. Fla. Feb. 26, 2026) .........5

*McLaughlin Chiropractic Assocs. v. McKesson Corp.*,
606 U.S. 146 (2025).........7

*Melito v. Experian Mktg. Sols., Inc.*,
923 F.3d 85 (2d Cir. 2019).........7, 8

*Osorio v. State Farm Bank, F.S.B.*,
746 F.3d 1242 (11th Cir. 2014) .........3

*Pessin v. JPMorgan Chase U.S. Benefits Exec.*,
112 F.4th 129 (2d Cir. 2024) .........5

*Phong Thanh Nguyen v. Chertoff*,
501 F.3d 107 (2d Cir. 2007)....................12

*Pulsifer v. United States*,
601 U.S. 124 (2024)....................9

*Radvansky v. Kendo Holdings, Inc.*,
No. 3:23-CV-00214-LMM, 2026 WL 810929 (N.D. Ga. Feb. 12, 2026)....................1

*Richards v. Fashion Nova, LLC*,
No. 1:25-CV-01145-TWP-MKK, 2026 WL 847568 (S.D. Ind. Mar. 26, 2026)....................5

*Richards v. Shein Distrib. Corp.*,
No. 1:25-CV-01385-TWP-TAB, 2026 WL 847584 (S.D. Ind. Mar. 26, 2026)....................5, 6

*Roberts v. Babkiewicz*,
582 F.3d 418 (2d Cir. 2009)....................3

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997)....................12

*Russello v. United States*,
464 U.S. 16 (1983)....................4

*Sellers v. M.C. Floor Crafters Inc.*,
842 F.2d 639 (2d Cir. 1988)....................3

*Shelton v. Fast Advance Funding, LLC*,
378 F. Supp. 3d 356 (E.D. Pa. 2019)....................2

*Steidinger v. Blackstone Med. Servs.*,
182 F.4th 532 (7th Cir. 2026)....................*passim*

*Stockdale v. Skymount Prop. Grp., LLC*,
825 F. Supp. 3d 622 (N.D. Ohio 2026)....................4

*Sw. Airlines Co. v. Saxon*,
596 U.S. 450 (2022)....................13

*United States v. Rowland*,
826 F.3d 100 (2d Cir. 2016)....................5

**Statutes and Regulations**

Telephone Consumer Protection Act, 47 U.S.C. § 227....................*passim*

47 C.F.R. § 64.1200....................10, 11, 14

**Other Authorities**

*Call*, *Webster's Ninth New Collegiate Dictionary* (9th ed. 1991) .................................................6

*Residence, Black's Law Dictionary* (6th ed. 1990)........................................................................12

*Residence, The Oxford Encyclopedic English Dictionary* (1st ed. 1991).....................................12

*Residential, Webster's Ninth New Collegiate Dictionary* (9th ed. 1991).....................................13

*Telephone*, *Webster's Ninth New Collegiate Dictionary* (9th ed. 1991) ........................................6

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 (F.C.C. 2003) ............................................................................................11

## INTRODUCTION

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendant Barkbox, Inc. ("Bark"), by and through its counsel, hereby moves for judgment on the pleadings on Plaintiff Adam Steuer's ("Plaintiff") claim that Bark violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiff alleges that Bark violated Section 227(c) of the TCPA by sending unsolicited text messages to a cellular telephone number listed on the National Do-Not-Call ("DNC") Registry. Plaintiff's claim fails as a matter of law because Section 227(c) expressly limits private enforcement to "telephone calls" directed to "residential telephone subscribers" listed on the DNC Registry. *See* 47 U.S.C. § 227(c). Plaintiff cannot pursue a claim under a provision of the TCPA that does not apply to the text messages he alleges he received.

*First*, Plaintiff's claim fails because Section 227(c)(5) does not apply to text messages. As the Seventh Circuit recently explained, consistent with the holdings of numerous district courts throughout the country, Congress created a private right of action under Section 227(c)(5) only for persons who receive multiple unwanted "telephone call[s]," not text messages. *Steidinger v. Blackstone Med. Servs*., 182 F.4th 532, 534 (7th Cir. 2026) (holding that Section 227(c)(5) "does not permit plaintiffs to sue for the receipt of unwanted texts"). The text, structure, and context of the TCPA, as well as the ordinary meaning of the terms, make clear that a text message is not a "telephone call." *Id*. at 534-35. Because Plaintiff's claim is based exclusively on receipt of text messages, not telephone calls, it fails as a matter of law. *See, e.g.*, *Radvansky v. Kendo Holdings, Inc.*, No. 3:23-CV-00214-LMM, 2026 WL 810929, at *2–3 (N.D. Ga. Feb. 12, 2026) (granting motion for judgment on the pleadings under this theory).

*Second*, Plaintiff's claim is premised solely on text messages sent to his cellular phone. Under its plain language, Section 227(c) also applies only to calls placed to "residential telephone subscribers," not cellular telephones. *See, e.g.*, *Cunningham v. Creative Edge Mktg. LLC*, No.

4:19-CV-00669-ALM-CAN, 2021 WL 2792353, at *4 (E.D. Tex. June 16, 2021) (ruling that "Plaintiff has not provided a sufficient basis to proceed on his claim under § 227(c)(5) of the TCPA" which applies "to a residential telephone subscriber" and "does not encompass Plaintiff's cell phone") (collecting cases), *adopted*, 2021 WL 3048400 (E.D. Tex. July 20, 2021). Courts interpreting the TCPA recognize that a "residential" telephone refers to a landline, not a cellular telephone. Thus, the statute's plain language, as well as the surrounding provisions of the TCPA, confirm that Congress distinguished between residential and cellular telephone services and intentionally limited Section 227(c) to the former. Because Plaintiff alleges only that he received unwanted messages to his cellular phone, his claim falls outside the scope of Section 227(c). Accordingly, the Court should grant Bark's motion for judgment on the pleadings.

## FACTUAL BACKGROUND

The Complaint alleges that "for many years" Plaintiff has been "the subscriber to and customary user of his cellular telephone number" ending in -9454 and that he registered that cell phone number with the DNC registry in 2009. Dkt. 1 ¶¶ 9, 15. Plaintiff asserts a single cause of action claiming Bark violated 47 U.S.C. § 227(c) by sending marketing text messages to him in January 2026. *Id*. ¶¶ 16–17. Plaintiff seeks to bring a putative class action over these alleged text messages sent to his cell phone number which he claims he did not solicit, but were "intended for someone other than, and unknown" to him. *Id*. ¶¶ 9–33. Plaintiff does not allege that these texts from Bark are ongoing, and the last alleged text was on January 8, 2026. *Id*. ¶ 17. While Plaintiff asserts he "suffered actual harm," he alleges no facts to substantiate that conclusory allegation. *Id*. ¶ 23. Instead, he seeks treble damages under 47 U.S.C. § 227(c)(5) of at least $1,500 for each alleged violation and his attorneys' fees—substantial windfalls (and penalties) for what even Plaintiff's Complaint ultimately suggests is a "wrong number" case. But because Plaintiff's claim

fails at the threshold—Section 227(c)(5) does not, as a matter of law, apply to text messages or to communications to a cell phone—Bark is entitled to judgment on the pleadings.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). On a Rule 12(c) motion, "the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citing *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). A motion under Rule 12(c) is addressed under the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *see also Bethea v. Winfield Sec. Corp.*, No. 23 CIV. 922 (AT), 2023 WL 8650004, at *2 (S.D.N.Y. Dec. 14, 2023). A court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, to survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Judgment on the pleadings is proper if "material facts are undisputed" and "judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

## ARGUMENT

The plain language of the TCPA forecloses Plaintiff's only theory of liability. Plaintiff claims Bark violated Section 227(c) by sending unsolicited text messages to his cell phone after he listed his mobile number on the DNC Registry. *See* Dkt. 1 ¶¶ 35–39. But Section 227(c) authorizes a private right of action only for "residential telephone subscribers" who receive more

than one unwanted "telephone call." 47 U.S.C. § 227(c). Both because text messages are not "telephone call[s]" and because a cell phone is not a "residential telephone," Plaintiff's claim falls outside the scope of Section 227(c), and his claim fails.

**I. Section 227(c)(5) Does Not Apply to Text Messages.**

Both the ordinary meaning of "telephone call" at the time Congress enacted the TCPA, and the statute's surrounding provisions, confirm that a text message is not a telephone call for purposes of Section 227(c)(5). *See, e.g.*, *Steidinger*, 182 F.4th at 535. *Steidinger* is directly on point. There, the plaintiffs alleged that they received unwanted marketing text messages and brought a putative class action under the TCPA's private right of action in Section 227(c)(5). *Id.* at 534. The Seventh Circuit affirmed dismissal, holding that Section 227(c)(5) "does not permit plaintiffs to sue for the receipt of unwanted texts." *Id.* at 534–35. In reaching that conclusion, the court examined both the ordinary meaning of "telephone call" when Congress enacted the TCPA and the broader statutory context. *Id.* at 535–38. Because the plaintiffs' claims were predicated on alleged text messages rather than telephone calls, the court held that they fell outside the scope of Section 227(c)(5). *Id.* at 535.

This conclusion is consistent with the growing consensus among district courts that, like *Steidinger*, have considered the issue and dismissed claims that seek to impose liability based on unwanted text messages. *See, e.g., Irvin v. Sonic Indus. Servs., LLC*, No. 3:25-CV-00242-LMM, 2026 WL 1098403, at *3 (N.D. Ga. Apr. 20, 2026) (granting motion to dismiss Section 227(c)(5) claim based on text messages and rejecting reliance on cases that deferred to FCC guidance); *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1370–72 (M.D. Fla. 2026) (dismissing text-only Section 227(c)(5) claims because the original meaning of "telephone call" was tied to sound and does not include text messages); *Stockdale v. Skymount Prop. Grp., LLC*, 825 F. Supp. 3d 622, 624–26 (N.D. Ohio 2026) (granting motion to dismiss holding contemporaneous definitions of

"call" and "telephone" did not reach texts); *Richards v. Fashion Nova, LLC*, No. 1:25-CV-01145-TWP-MKK, 2026 WL 847568, at *3 (S.D. Ind. Mar. 26, 2026) ("If 'telephone call' already included 'calls and messages,' then the TCPA's definition of 'telephone solicitation' would be redundant."); *Richards v. Shein Distrib. Corp.*, No. 1:25-CV-01385-TWP-TAB, 2026 WL 847584, at *3 (S.D. Ind. Mar. 26, 2026) (same); *Lopresti v. Nouveau Essentials Mktg. LLC*, No. 5:25-CV-00282-CEM-PRL, 2026 WL 964758, at *5 (M.D. Fla. Feb. 26, 2026) (report and recommendation granting motion for judgment on the pleadings where plaintiff "alleged only unsolicited text messages, rather than traditional telephone calls"); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-CV-00846-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (finding use of the term "text message" in other portions of the TCPA confirms the plain meaning of "telephone call" in Section 227(c)(5) does not include text messages); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1274 (N.D. Fla. 2025) (same).[1]

This Court should reach the same conclusion and grant Bark's motion under Fed. R. Civ. P. 12(c) because Plaintiff's claim fails as a matter of law.

### A. The Ordinary Meaning of "Telephone Call" in 1991, When the TCPA Was Enacted, Did Not Encompass Text Messages.

When interpreting a statute, courts start with the text "seek[ing] to discern and apply the ordinary meaning of its terms at the time of their adoption." *Pessin v. JPMorgan Chase U.S. Benefits Exec.*, 112 F.4th 129, 141 (2d Cir. 2024) (quoting *BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230, 237 (2021)). "If the meaning is plain, the inquiry ends there." *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016).

[1] Plaintiff's counsel here represented the plaintiffs in several of the following cases that advanced and lost the same counterarguments: *Irvin*, 2026 WL 1098403, *Fashion Nova*, 2026 WL 847568, and *Shein*, 2026 WL 847584. Thus, despite Plaintiff's suggestion that the statutory text clearly favors his position, *see* Dkt. 22, courts have rejected the precise argument advanced here and dismissed Section 227(c)(5) claims predicated on text messages.

The TCPA was enacted in 1991. *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). Section 227(c)(5), which is unchanged since enactment, provides:

> A person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State . . . .

47 U.S.C. § 227(c)(5) (emphasis added). Although the term "telephone call" is not defined in the TCPA, courts can look to contemporaneous dictionary definitions for guidance. *See Delaware v. Pennsylvania*, 598 U.S. 115, 127–28 (2023); *In re Enf't of Philippine Forfeiture Judgment*, 442 F. Supp. 3d 756, 761 (S.D.N.Y. 2020), *aff'd*, 153 F.4th 142 (2d Cir. 2025) ("A court may use a dictionary to determine the ordinary, common-sense meaning of the words." (quotation omitted)).

At the time the TCPA was enacted, a telephone was "[a]n instrument for reproducing sounds at a distance." *Telephone*, *Webster's Ninth New Collegiate Dictionary* (9th ed. 1991). And a call meant "to get or try to get into communication by telephone." *Call*, *id.* "Thus, in 1991, a 'telephone call' referred to communication via sound." *Steidinger*, 182 F.4th at 536. Because "[t]ext messages do not reproduce sounds, . . . they do not qualify as a new application of telephone call within the meaning of that term." *Id*. at 535–36; *see also Shein*, 2026 WL 847584, at *2 (applying contemporaneous dictionary definitions to conclude that "telephone call" does not encompass text messages). Indeed, text messages did not exist when the TCPA was passed, so Congress could not have intended for the phrase "telephone call" to include a text message. *Steidinger*, 182 F.4th at 535 (noting the impossibility that the term was intended to include text messages in 1991 since the first text message was not even sent until December 1992).

Moreover, even the present-day ordinary understanding of the term "telephone call" leads to the same conclusion. As one district court aptly observed, "No normal person refers to a text

message, or thinks of a text message, as a 'call.' No ordinary user of the English language would write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue,' nor would any ordinary reader interpret the sentence in that manner." *Davis*, 797 F. Supp. 3d at 1273. Given this, the ordinary meaning of "telephone call" in the statute does not include text messages. *See, e.g.*, *James*, 828 F. Supp. 3d at 1370–72. And Plaintiff's unsupported assertion in his letter to the Court, Dkt. 22, that a "'telephone' identifies the instrument or medium through which the communication occurs" and "does not require the communication itself to be audible" is thus contradicted by the plain meaning of the statutory text. *Id*. at 2.

Though there are some decisions suggesting that the TCPA applies to text messages, those rulings either (1) assume, without deciding this ultimate issue; and/or (2) interpret a different statutory subsection altogether. *See id*. at 1 (citing *Duran v. La Boom Disco, Inc.*, 955 F.3d 279 (2d Cir. 2020), *vacated*, 141 S. Ct. 2509 (2021), and *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019)). In *Melito*, for example, the Second Circuit acknowledged that "text messages are not explicitly covered under the TCPA" but assumed for its purposes without having to decide, that Section *227(b)* (not the provision at issue in this case) reaches text messages because "the FCC has interpreted the Act to cover them" and because the court was evaluating jurisdictional injury and not the scope of TCPA liability. 923 F.3d at 88–89 & 93 n.5.[2]

Similarly, in *Duran*, a case about automatic dialing systems, the court also noted that it was "undisputed" that Section *227(b)* (again, not at issue here) covers texts. *See* 955 F.3d at 280 n.4.

---

[2] To the extent *Melito* relied on the FCC's interpretation of the TCPA, the Supreme Court recently rejected such a practice. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-92 (2024) (holding that courts must exercise independent judgment when interpreting statutes); *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 152 (2025) (expressly confirming that FCC interpretations of the TCPA do not bind courts adjudicating private actions). Thus, the question of whether Section 227(c)(5) reaches text messages must be resolved based on the statute's text and not based on deference to the FCC's earlier guidance.

Notably, the Supreme Court vacated *Duran* because the case conflicted with its automatic dialing system decision in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021). In *Facebook*, the Supreme Court made clear that the applicability of the TCPA to texts remained an open question, because whether the Act applies to texts has not been presented to the Court, and that any assumptions by courts as to the applicability were just that: an "assum[ption] that it does without considering or resolving that issue." 592 U.S. at 400 n.2 (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) and clarifying that *Campbell-Ewald* did not resolve the question); *see also Steidinger*, 182 F.4th at 537–38 (noting that *Duguid* clarified that the Supreme Court has not yet answered the question of whether a text message qualifies as "telephone call" under Section 227(c)).

**B. Other Provisions of the TCPA Confirm that the Term "Telephone Call" in Section 227(c)(5) Does Not Include Text Messages.**

The surrounding text of Section 227 further supports the conclusion that while other provisions of the TCPA may address text messages, Section 227(c)(5)'s private right of action does not. Indeed, when Congress wanted to refer to both calls and messages, it did so. Section 227(a)(4), for example, defines "telephone solicitation" to mean "initiation of a telephone call *or message*." (emphasis added). And the statute similarly directs the FCC to initiate rulemaking "to protect residential telephone subscribers' privacy rights to avoid receiving *telephone solicitations* to which they object." *Id.* § 227(c)(1) (emphasis added). These provisions reflect the grant of authority to the FCC under Sections 227(c)(1)-(4) to regulate and enforce regulations regarding "telephone solicitations," which include telephone "messages." *See Steidinger*, 182 F.4th at 536.

But when Congress created a private right of action in Section 227(c)(5), it chose to use different language. Rather than authorizing suit based on prohibited "telephone solicitations," or "telephone call[s] or message[s]," Congress conspicuously limited the remedy in Section 227(c)(5) to persons who received more than one unwanted "telephone call[.]" *See* 47 U.S.C. § 227(c)(5).

That distinction is significant. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, the same term usually has the same meaning and different terms usually have different meanings."). By using the narrower term "telephone call" in Section 227(c)(5) while using broader terms elsewhere in the statute, Congress demonstrated that the remedy available to private plaintiffs for that subsection is narrower than the grant of authority to the FCC. Reading "telephone call" to encompass text messages in subsection (c)(5) would ignore Congress's choice to use different terms in adjacent provisions of the same statute.

Other provisions of the TCPA reinforce this conclusion. Section 227(e)(1), for example, expressly regulates caller-ID information "in connection with any voice service or *text messaging service*." 47 U.S.C. § 227(e)(1) (emphasis added). Likewise, Section 227(e)(8) separately defines both "text message" and "text messaging service." Congress's decision to expressly reference text messages in those provisions—but not in Section 227(c)(5)—confirms that text messages fall outside the scope of the private right of action.

### C. The FCC's Implementing Regulations Cannot Create a Private Right of Action in Section 227(c)(5) for Text Messages.

Plaintiff argues in his letter to the Court that because the FCC extended the "do not call" regulations to text messages through 47 C.F.R. § 64.1200(e) and Section 227(c)(5) creates a private right of action for violations of the regulations, the term "telephone call" in Section 227(c)(5) must likewise encompass text messages. *See* Dkt. 22 at 2. Plaintiff's reliance on 47 C.F.R. § 64.1200(e) to expand the plain meaning of "telephone call" should be rejected on multiple grounds.

First, this reasoning conflates the scope of the FCC's regulatory authority with the scope of Congress's private right of action. "Congress can (and does) provide private rights of action narrower than its full breadth of regulation." *Davis*, 797 F. Supp. 3d at 1274. Section 227(c)(5), for example, limits the private right to those who received two or more unwanted calls, even when

a single call would violate the FCC regulations. *Compare* 47 U.S.C. § 227(c)(5) (prohibiting "*more than one* telephone call within any 12-month period") (emphasis added) *with* 47 C.F.R. § 64.1200(c) (stating that "[n]o person or entity shall initiate *any* telephone solicitation to … A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry") (emphasis added). And the FCC's decision to apply certain DNC regulations to text messages cannot expand Congress's separate decision to limit the private right of action to "telephone call[s]." *See Alexander v. Sandoval*, 532 U.S. 275, 286, 291 (2001) (a federal regulation cannot "conjure up a private cause of action that has not been authorized by Congress"). This well-settled principle forecloses Plaintiff's reliance on FCC rulemaking to expand the private right of action under Section 227(c)(5) beyond the text of the statute.

Regardless, agency regulations are not entitled to any deference, and do not control when the regulations conflict with the plain language of the statute. *See Art & Antique Dealers League of Am., Inc. v. Seggos*, 121 F.4th 423, 435 (2d Cir. 2024) ("An administrative agency does not have authority to pass regulations that are inconsistent with the meaning of a statute . . . In the post-*Chevron* era, regardless of whether a statute is deemed to be ambiguous or unambiguous, interpretation of the statute is a question of law, and accordingly, it is the court, and not the administrative agency, that determines its meaning."). Just so here. Because Section 227(c)(5) explicitly applies only to "telephone call[s]," and a "telephone call" is not a "text message," the FCC's implementing regulations are not subject to deference.

Additionally, this argument ignores that Section 64.1200(e) incorporates the FCC's 2003 Order and purports to regulate "telephone solicitations or telemarketing calls or text messages" only "*to the extent described in*" the 2003 order. 47 C.F.R. § 64.1200(e) (emphasis added) (citing *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 (F.C.C. 2003)). Paragraph 165 of the 2003 Order is incorporated by reference into Section

64.1200(e) and indicates that, under some circumstances, "calls" include "text messages"; however, those circumstances are not present here. The 2003 Order was only addressing text messages sent using "an automatic telephone dialing system or an artificial or prerecorded message"—a practice prohibited by Section 227(b), not Section 227(c). 18 F.C.C. Rcd. at 14116 ¶ 165. In fact, the footnotes to paragraph 165 of the 2003 Order cite only to Section 227(b) and Section 64.1200(a), not Section 227(c) or Sections 64.1200(c) or (d). *Id*. Thus, the 2003 Order does not support the conclusion that text messages are regulated under Section 227(c)(5).

In sum, the plain language of the TCPA is clear: a "telephone call" is not a text message in the context of a private right of action under Section 227(c)(5). Because Plaintiff's claim is premised entirely on his receipt of text messages from Bark, not telephone calls, his claim under Section 227(c)(5) fails as a matter of law.

**II. Section 227(c) Extends to "Residential Telephone Subscribers," Not Cell Numbers.**

Plaintiff's claim fails for an additional, independent reason: Section 227(c) applies only to residential telephone subscribers, not cellular telephone users. Once again, the statute's text is straightforward. Congress directed the FCC to promulgate regulations protecting the privacy rights of "residential telephone subscribers," and it authorized a private right of action only for violations of those regulations. *See* 47 U.S.C. § 227(c)(1), (5). Because Plaintiff's claim is based on text messages sent to his cell phone number, it falls outside the scope of Section 227(c).

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning" by referring "to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340–41 (1997). The "inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Id*. at 340 (quotation omitted); *Phong Thanh Nguyen v. Chertoff*, 501 F.3d 107, 112 (2d Cir. 2007) ("[I]f the language of a statute is

'unambiguous,' no further inquiry is required."). Here, Section 227(c) unambiguously applies to "residential telephone subscribers," not cell phone users.

When Congress authorized the FCC to create the national DNC Registry, it confined that authority to "*residential* telephone subscribers." 47 U.S.C. § 227(c)(1) (emphasis added). The statute does not define this term, so the court may again look to dictionary definitions. *See Delaware*, 598 U.S. at 127-28; *In re Enf't*, 442 F. Supp. 3d at 761. The plain meaning of "residential" does not include cellular telephones. Specifically, in 1991, a "residence" was defined as "the place where a person resides; an abode." *Residence, The Oxford Encyclopedic English Dictionary* (1st ed. 1991); *see also Residence, Black's Law Dictionary* (6th ed. 1990) ("[a] house where one's home is; a dwelling house"). And "residential" meant "of or relating to residence or residences." *Residential, Webster's Ninth New Collegiate Dictionary* (9th ed. 1991). Thus, a "residential telephone" means an instrument for reproducing sound at a distance located in one's residence. A cell phone, which is mobile and not connected to a house, fixed abode, or dwelling, is not "residential." *See, e.g., Gaker v. Q3M Ins. Sols*., No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023) (report and recommendation holding that the definition of "residential" under subsection (c) does not include cell phones); *cf. Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019) (reasoning that "the plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere" but declining to decide the issue for other reasons).

This reading of the statute is further supported by other provisions in the TCPA that unambiguously distinguish between "residential" and "cellular" telephone lines. For example, Section 227(b)(1)(A)(iii) restricts calls made using an artificial or prerecorded voice to a "cellular telephone service[.]" As here, Congress knew how to reference cellular telephones, but it omitted any such reference in Section 227(c). Under the "meaningful-variation canon" of construction,

such a distinction in terms is presumed to reflect Congress's intent. *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022).

In fact, the Supreme Court recognized this particular distinction in *Barr v. American Association of Political Consultants*, noting that the TCPA's restrictions on calls to cellular telephones are separate from its restrictions on calls to residential telephones. 591 U.S. 610, 617 n.3 (2020) (differentiating between the plaintiffs' claim under Section 227(b)(1)(A)(iii), involving cellular telephones, from "the TCPA's separate restriction on robocalls to home phones" under Section 227(b)(1)(B)); *see also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 273 (3d Cir. 2013) (holding that exemptions "that apply exclusively to residential lines," construed as "land-lines," do not apply to calls made to cellular phones); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014) (distinguishing calls made to a "residential telephone line" under Section 227(b)(1)(B) from calls made to a "cell-phone number," which concerned Section 227(b)(1)(A)(iii)). Accordingly, when Congress granted the FCC authority to promulgate regulations under the TCPA that create the DNC Registry to protect "residential telephone subscribers," it intentionally withheld from the FCC any authority to create a registry that included cell phone numbers. *See Creative Edge Mktg. LLC*, 2021 WL 2792353, at *4.

Some courts have adopted a broader reading of Section 227(c), holding that a cell phone user may qualify as a "residential telephone subscriber" if the phone is used for personal or household purposes. *See* Dkt. 22 at 3 (citing *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 204–07 (S.D.N.Y. 2024)). Those decisions reason that "residential" modifies "subscriber" and therefore refers to the kind of person protected, rather than the service used.

This interpretation impermissibly rewrites the statute. Section 227(c) does not refer solely to "residential subscribers"; it refers to "residential *telephone* subscribers." 47 U.S.C. § 227(c)(1) (emphasis added); *see also* 47 C.F.R. § 64.1200(c) (stating that no person shall initiate a telephone

call to a "*residential telephone subscriber* who has registered his or her telephone number on the national do-not-call registry") (emphasis added). That phrase describes a subscriber to residential telephone service, and a residential telephone service refers to a landline, not a cell phone. *See Creative Edge Mktg. LLC,* 2021 WL 2792353, at *4; *see also Cabrera v. Gov't Employees Ins. Co.*, 452 F. Supp. 3d 1305, 1314 (S.D. Fla. 2014) ("Practical realities as well as the plain language of the TCPA support a distinction between residential and cellular lines." (quotation omitted)). The surrounding text confirms this reading: Congress separately referred to "cellular telephone service" in subsection (b), while limiting subsection (c) to residential telephone subscribers. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) *with* § 227(c)(1). Treating a cellular phone as "residential" based solely on a plaintiff's asserted use of the device would erase the distinction Congress drew between residential and cell phone services elsewhere in the TCPA and render Section 227(c)'s limit to "residential telephone subscribers" entirely meaningless. *See, e.g., Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'").

As such, even assuming Plaintiff's allegation that he uses his cell phone for "personal and household purposes" to be true, this fact is neither determinative nor material because the statutory text plainly distinguishes cellular calls from residential calls. *See, e.g.*, *Cunningham v. Lines*, No. 15-62580-CIV-MORENO, 2016 WL 7494871, at *2 (S.D. Fla. Dec. 29, 2016) (concluding that a "residential telephone line" as the term is used in Section 227(b)(1)(B) does not include a cell phone and that the plaintiff's "assertion that a cellular phone can be converted into a residential phone [was] unavailing"). Because Plaintiff alleges the unwanted messages from Bark were sent to his cell phone—and Section 227(c) applies only to residential, not cellular, phones—Plaintiff's

claims cannot proceed as alleged, and the Court should grant Bark's motion for judgment on the pleadings. Plaintiff's claim must be dismissed as a matter of law.

## CONCLUSION

For the reasons set forth above, Bark respectfully requests that the Court grant its motion for judgment on the pleadings and enter an order of dismissal.

Dated: August 26, 2026
Atlanta, Georgia

Respectfully submitted,

*/s/ S. Stewart Haskins II*
S. Stewart Haskins II (*admitted pro hac vice*)
Allexia Bowman Roberts (*admitted pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
shaskins@kslaw.com
roberts@kslaw.com

Kevin J. O'Brien
**KING & SPALDING LLP**
1290 Avenue of the Americas, 14th Floor
New York, New York 10104
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
kobrien@kslaw.com

*Counsel for Defendant*

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMIT**

Pursuant to L. Civ. R. 7.1(c) and Rule III.D of the Court's Individual Practices in Civil Cases, I, S. Stewart Haskins II, hereby certify that the foregoing Memorandum of Law contains 4,903 words, excluding the caption, table of contents, table of authorities, signature block and this certificate. In preparing this certification, I relied on the word count of Microsoft Word.

Dated: August 26, 2026

*/s/ S. Stewart Haskins II*
S. Stewart Haskins II