**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ADAM STEUER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>BARKBOX, INC.,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO. 1:26-cv-02038 (AT) |

/

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S <u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

# Table of Contents

*Introduction* ..... *1*

*Background* ..... *3*

*Legal Standard* ..... *4*

*Argument* ..... *5*

*I. Text Messages Are "Calls" Under the TCPA, As the Second Circuit and the Weight of Authority Have Held.* ..... *5*

**A. The plain meaning of the word "call" includes text messages.** ..... **5**

**B. The statute's structure and purpose confirm that "call" includes text messages, and that residential subscribers protected by § 227(c) include cell phone subscribers.** ..... **6**

**C. Defendant's argument that "telephone" is limited to sound-based communication is wrong.** ..... **9**

**D. Congress ratified this interpretation when it amended the TCPA in 2019.** ..... **10**

**E. Even if the statute left room to doubt that a text message can be a "call," the FCC's longstanding interpretation should carry the day.** ..... **12**

**F. The Second Circuit and courts within it have overwhelmingly held that text messages are "calls" under the TCPA** ..... **14**

*II. Section 227(c)'s Do Not Call Registry Protections Extend to Cellular Numbers Used for Personal and Residential Purposes.* ..... *18*

*Conclusion* ..... *22*

# Table of Authorities

## Cases

*Alexander v. Sandoval*, 532 U.S. 275 (2001).......13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007).......4

*Bank v. Simple Health Plans LLC*, 2019 U.S. Dist. LEXIS 215228 (E.D.N.Y. 2019).......16

*Bethea v. Winfield Sec. Corp.*, No. 23 Civ. 922 (AT), 2023 WL 8650004 (S.D.N.Y. Dec. 14, 2023).......4

*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024).......1, 2, 7, 17, 18

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016).......2, 9, 14

*Cleveland v. Caplaw Enters.*, 448 F.3d 518 (2d Cir. 2006).......4

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986).......10

*Duran v. La Boom Disco, Inc.*, 955 F.3d 279 (2d Cir. 2020).......2, 14, 15

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000).......8

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009).......10

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013).......13

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995).......8

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006).......11

*Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617 (M.D. Fla. Aug. 15, 2025)...2, 7, 17

*Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026).......5, 6, 9

*Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129 (E.D.N.Y. 2015).......16

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019).......3

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).......9, 12, 15, 18

*Melito v. Am. Eagle Outfitters, Inc.*, No. 14 CV 02440, 2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) ....15

*Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019)....2, 14

*Metten v. Town Sports Int'l, LLC*, No. 18-CV-4226 (ALC), 2019 WL 1299939 (S.D.N.Y. Mar. 21, 2019) ....16

*Rabbitt v. Rohrman Midwest Motors, Inc.*, No. 25 C 11312, 2026 WL 851279 (N.D. Ill. Mar. 27, 2026) ....8, 9, 11

*Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466 (S.D.N.Y. 2018)....16

*Russello v. United States*, 464 U.S. 16 (1983) ....11

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ....5, 6, 7, 8, 9

*Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907 (W.D. Mich. 2018)....13

*Sellers v. M.C. Floor Crafters Inc.*, 842 F.2d 639 (2d Cir. 1988) ....4

*Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026)....16

*Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023)....9

*Warciak v. Subway Rests., Inc.*, 949 F.3d 354 (7th Cir. 2020) ....6

*Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025) ....15

*Wilson v. Easy Spirit, LLC*, 2026 U.S. Dist. LEXIS 69059 (D. Conn. Mar. 31, 2026)....11, 15

**Statutes and Rules**

Telephone Consumer Protection Act, 47 U.S.C. § 227 .... passim

47 U.S.C. § 227(a)(4)....3, 7, 8

47 U.S.C. § 227(b) ....6, 10, 12, 13, 15

47 U.S.C. § 227(b)(1)(A)....10, 14, 16

47 U.S.C. § 227(b)(2) ........................................ 14

47 U.S.C. § 227(c)(1) ........................................ 3, 7, 8, 12, 17, 18

47 U.S.C. § 227(c)(1)(E) ........................................ 12

47 U.S.C. § 227(c)(3) ........................................ 1

47 U.S.C. § 227(c)(3)(F) ........................................ 1, 6

47 U.S.C. § 227(c)(5) ........................................ 1, 3, 5, 6, 8, 9, 10, 11, 12, 13, 15

47 U.S.C. § 227(e)(8)(C) ........................................ 7

47 U.S.C. § 227(i)(1)(A) ........................................ 10, 15

Fed. R. Civ. P. 12(b)(6) ........................................ 4

Fed. R. Civ. P. 12(c) ........................................ 4

**Regulations and Agency Decisions**

47 C.F.R. § 64.1200(c)(2) ........................................ 1, 17

47 C.F.R. § 64.1200(e) ........................................ 1, 8, 12

*In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014 (2003) ..... 1, 2, 6, 7, 11, 14, 17, 18

*In re Targeting and Eliminating Unlawful Text Messages*, 38 FCC Rcd. 12247 (2023) ................ 6

*In re Targeting and Eliminating Unlawful Text Messages*, 88 Fed. Reg. 20800 (2023) ................ 6

## Introduction

The Telephone Consumer Protection Act's provisions authorizing a nationwide Do Not Call List, 47 U.S.C. § 227(c), empower the FCC to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," *id.* § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list. *Id.* § 227(c)(3)(F). For decades, the FCC has consistently made those protections available to all residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. §§ 64.1200(c)(2), (e); *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003). The FCC has also determined that those provisions authorize it to prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); 18 F.C.C. Rcd. at 14115. In the decades since the FCC established the Do Not Call List and began enforcing those protections, over 200 million phone subscribers have come to rely on them. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203–204 & n.5 (S.D.N.Y. 2024). Plaintiff Adam Steuer is one of them.

Plaintiff alleges that Defendant BarkBox, Inc. ("Defendant" or "BarkBox") sent telemarketing text messages to his cellular telephone number after that number had been listed on the National Do Not Call Registry for more than sixteen years, without his consent. Compl. ¶¶ 9, 15–22. BarkBox has moved for judgment on the pleadings, and it asks this Court to do two things at once: (1) hold that a text message is never a "telephone call" for purposes of the private right of action in § 227(c)(5), no matter how it is used to solicit business; and (2) hold that a cellular telephone can never belong to a "residential telephone subscriber," no matter how the subscriber actually uses it. Both requests should be rejected.

First, as courts and the FCC have long and recently recognized, the statute's ordinary meaning, structure, and purpose confirm that the word "call" in the TCPA refers to any attempt to communicate by telephone, so the Do Not Call List rules apply equally to telemarketing text messages. The Second Circuit has already treated text messages as "calls" for TCPA purposes. *See Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 88–89 (2d Cir. 2019) (recognizing FCC interpretation that texts are covered and relying on *Campbell-Ewald*); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 283–84 (2d Cir. 2020) (quoting *Campbell-Ewald*, "[i]t is undisputed that a text message . . . qualifies as a 'call'" and holding an unwanted text is a concrete injury). BarkBox's reliance on out-of-Circuit authority cannot overcome the Second Circuit's repeated recognition that text messages qualify as "calls" under the TCPA, the persuasive authority within this District applying that conclusion to § 227(c), or the FCC regulations expressly extending the Do Not Call rules to text messages.

Second, courts—including this one—have long recognized that the "residential telephone subscriber[s]" protected by § 227(c) include cellular subscribers who, like Plaintiff, use their cell phones for personal and household purposes rather than a landline. *See Cacho*, 739 F. Supp. 3d at 203–07 (collecting cases); *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025). The FCC reached the same conclusion when it first created the Do Not Call List rules. *See* 18 FCC Rcd. at 14037–39 ¶¶ 33–36. Plaintiff alleges exactly the facts that bring him within that protection: he has no landline, he uses his cellular number "for personal and household purposes" in the same manner "as one would use a landline telephone number in a home," and that number has been registered with the National Do Not Call Registry since 2009. Compl. ¶¶ 9–15.

The Defendant's motion should be denied.

**Background**

Section 227(c) of the Telephone Consumer Protection Act empowers the FCC to decide whether to create a national Do Not Call List and to determine the rules that will govern it. *See* 47 U.S.C. § 227(c)(1)–(4). The guiding purpose of the Do Not Call List is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1). The key operative term there is "telephone solicitations," which are defined in the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services, which is transmitted to any person." *Id.* § 227(a)(4). Section 227(c)(5) provides for private enforcement of the FCC's Do Not Call List rules, granting an express private right of action to any "person who has received more than one telephone call within any 12-month period . . . in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under the Do Not Call List rules. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019); Compl. ¶ 8 (quoting same).

Plaintiff Adam Steuer alleges that he has, for many years, been the subscriber to and customary user of his cellular telephone number ending in -9454, which he does not and never has used for any business or commercial purpose. Compl. ¶¶ 9–11. Plaintiff does not have a landline telephone number in his home, and he uses his cellular number for personal use only, "as one would use a landline telephone number in a home," including to communicate with friends and family, schedule personal appointments, and for other household purposes. *Id.* ¶¶ 12–14. Plaintiff's number has been registered with the National Do Not Call Registry since 2009—more than sixteen years before the events giving rise to this suit. *Id.* ¶ 15.

Despite that registration, Defendant delivered, or caused to be delivered, a series of unsolicited marketing text messages to Plaintiff's number in January 2026, advertising discounts and promotions for BarkBox's dog-subscription products. *Id.* ¶¶ 16–17, 20. Plaintiff never gave Defendant prior express consent or permission to send him advertisement or marketing text messages, and he never requested information or promotional materials from Defendant. *Id.* ¶¶ 21–22. Plaintiff alleges that the messages were intended for someone other than, and unknown to, him, and that Defendant knew or should have known that Plaintiff's number was registered on the DNC Registry. *Id.* ¶¶ 19, 24. As a result, Plaintiff suffered an invasion of privacy, an intrusion into his life, and a private nuisance. *Id.* ¶ 23.

**Legal Standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion under Rule 12(c) is addressed under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bethea v. Winfield Sec. Corp.*, No. 23 Civ. 922 (AT), 2023 WL 8650004, at *2 (S.D.N.Y. Dec. 14, 2023). The Court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Judgment on the pleadings is warranted only where "material facts are undisputed" and "judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). BarkBox's motion does not dispute any of the facts Plaintiff has alleged; it rests entirely on two purely legal arguments about the scope of § 227(c), both of which are wrong.

## Argument

### I. Text Messages Are "Calls" Under the TCPA, As the Second Circuit and the Weight of Authority Have Held.

BarkBox contends that a single use of the word "call" in § 227(c)(5)'s private right of action means the Do Not Call List rules can never apply to text messages, no matter their content or purpose. That is incorrect. As courts and the FCC have long recognized, the statute's ordinary meaning, structure, and purpose confirm that the word "call" refers to any attempt to communicate by telephone, so the Do Not Call List rules reach telemarketing text messages just as they reach voice calls.

#### A. The plain meaning of the word "call" includes text messages.

The starting point is the statute's text, which confirms that "call" includes text messages. To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That is because the contemporaneous "plain and ordinary meaning" of "the statutory term 'call'… refer[s] to an attempt to communicate by telephone." *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir. 2009), and *Webster's Third New International Dictionary* (1981 ed.)).

That basic definition appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, Random House Webster's College Dictionary (1991) ("to communicate or try to communicate with by telephone"); Oxford English Dictionary (2d ed. 1989) ("a summons or communication by telephone"). Texting is, of course, a means of communicating with someone

by telephone, so "text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 954). Indeed, both the Seventh and Ninth Circuits have said, in cases alleging violations of § 227(b), that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *see Howard*, 164 F.4th at 1123–24; *Satterfield*, 569 F.3d at 954. And absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. So the consensus meaning of "call" in § 227(b), as encompassing texts, supports reading "call" in § 227(c) the same way.

The FCC has long endorsed that interpretation. The agency determined as early as 2003 that when the TCPA says "call," it means not just traditional voice calls but also modern text messages, because the statutory text "encompasses both voice calls and text calls to wireless numbers." 18 FCC Rcd. 14014, 14115 ¶ 165 (Jul. 3, 2003). And the FCC has consistently adhered to that position ever since. *See* 88 Fed. Reg. 20800, 20802 ¶ 6; 38 FCC Rcd. 12247, 12256–57 ¶ 26 (2023). Courts have commonly treated that interpretation as obvious and uncontroversial. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'"); *Warciak*, 949 F.3d at 356.

**B. The statute's structure and purpose confirm that "call" includes text messages, and that residential subscribers protected by § 227(c) include cell phone subscribers.**

Reading § 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of § 227(c) further confirms that text messages are covered. The core of § 227(c) is its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). A "telephone solicitation" is

defined to mean "the initiation of a telephone call or message . . . which is transmitted to any person." *Id.* § 227(a)(4) (emphasis added). That definition plainly encompasses modern text messages, which are of course "ma[de] or transmitt[ed]" to a "telephone number." *Id.* § 227(e)(8)(C). And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers: the FCC determined that cell phone subscribers are covered when it first created the Do Not Call List rules, *see* 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36 (2003), and courts have overwhelmingly agreed with that interpretation of the statute ever since, *see, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases). Section II below addresses that second point in more detail.

Contemporary definitions of the word "message" confirm the same breadth as to the form of communication. A "message" in 1991 was "[a]ny notice, word, or communication, no matter the mode and no matter how sent." Black's Law Dictionary (6th ed. 1990). So "call" and "message" both describe communication with a phone, and neither differentiates between oral and written mediums. The purpose of the Do Not Call List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). "[A] voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954. Nothing in the statute suggests Congress thought oral messages were more invasive than written ones, and Plaintiff's allegations here—that he suffered "an invasion of privacy, an intrusion into his life, and a private nuisance," Compl. ¶ 23—describe precisely the harm the Do Not Call List exists to prevent, regardless of whether the intrusion arrived as a ringing phone or a buzzing text.

Defendant's related contention—that reading "call" in § 227(c)(5) to reach text messages renders the word "message" in § 227(a)(4)'s definition of "telephone solicitation" surplusage, in violation of the meaningful-variation canon—fails for the same reason. Section 227(c)(5)'s private right of action must be read "in [its] context and with a view to [its] place in the overall statutory scheme," not in isolation. *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotation omitted). Section 227(c)(5) provides a remedy for violations of "the regulations" promulgated under § 227(c)(1), and those regulations—including 47 C.F.R. § 64.1200(e)—extend to text messages regardless of whether the word "call" standing alone would do so. Reading § 227(c)(5) any other way would mean that Congress created a private right of action tied to violations of regulations governing "telephone solicitations" generally, *see* § 227(c)(1), but then silently carved text-message solicitations back out of that remedy for a reason that finds no support in the statute's text, structure, or history. *See Rabbitt v. Rohrman Midwest Motors, Inc.*, No. 25 C 11312, 2026 WL 851279, at *3 (N.D. Ill. Mar. 27, 2026) (rejecting an identical argument because "defendant offers no explanation" why Congress would have intended such a distinction, and because the "better reading" treats § 227(c)(5) as "part of a statutory scheme that provides a private right of action to individuals who are the victims of multiple violations of the regulations promulgated by the FCC under § 227(c)(1)" (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995))). As the *Rabbitt* court explained, "the court is tasked with acting as the faithful agent of Congress," and defendant's atextual reading "would undercut Congress's otherwise coherent regulatory scheme for a reason that neither defendant nor th[e] court can articulate." *Id.*

That conclusion finds further support in statutory stare decisis. In 2009, the Ninth Circuit held "that a text message is a 'call' within the meaning of the TCPA." *Satterfield*, 569 F.3d at 952.

The Supreme Court later confirmed, relying on that line of authority, that “[a] text message to a cellular telephone, it is undisputed, qualifies as a ‘call’” under the TCPA. *Campbell-Ewald*, 577 U.S. at 156. Although *Satterfield* applied *Chevron*, *Loper Bright* expressly preserved “the holdings of those cases that specific agency actions are lawful,” which “are still subject to statutory stare decisis despite [the] change in interpretive methodology.” *Loper Bright*, 603 U.S. at 412 (emphasis added). The longstanding judicial recognition that a text message is a “call” under the TCPA is accordingly not open to reconsideration on defendant’s surplusage theory. *See Rabbitt*, 2026 WL 851279, at *3–4 (declining, on this basis, to credit an identical argument that § 227(c) applies only to voice calls).

**C. Defendant's argument that "telephone" is limited to sound-based communication is wrong.**

BarkBox's motion depends on redefining "telephone" itself as a device limited to sound transmission, relying on a 1991 dictionary definition of "telephone" as "[a]n instrument for reproducing sounds at a distance." Mot. at 6 (quoting Webster's Ninth New Collegiate Dictionary). But nothing in the TCPA adopts such a restrictive definition, and the argument overemphasizes the significance of the word "telephone" in this context. "Telephone" is even used in the dictionary definition of "call" relied upon by the *Satterfield* and *Howard* courts. *See* Webster's Third New International Dictionary 318 (1981 ed.) ("call" means a "communicat[ion] with or [an attempt] to get in communication with a person by telephone"). To argue that the word "telephone" eliminates text messages ignores the redundancy of the term inherent to this definition.

Had Congress intended to eliminate textual communications from § 227(c)(5), it would have used the phrase "voice call," rather than "telephone call." Indeed, the Ninth Circuit has already shown how Congress knows to draw that line: in *Trim v. Reward Zone USA LLC*, the court

held that text messages at issue did not qualify under a different TCPA provision "because they did not include audible components," which contrasted with Congress's use of the word "voice" in that provision. 76 F.4th 1157, 1158, 1160–61 (9th Cir. 2023) (analyzing "the disputed term—'voice'" in 47 U.S.C. § 227(b)(1)(A)). Section 227(c)(5) contains no such "voice" limitation; it uses only the broader term "telephone call." By 1991, telephones—including pagers and early digital systems—were already used to transmit non-voice information, and the statute regulates communications sent to a "telephone number," not merely audible transmissions. A text message sent to a telephone number through a telephone network is therefore a "telephone" communication regardless of whether it is conveyed by sound or text.

**D. Congress's subsequent amendments confirm, rather than undermine, the TCPA's application to text messages.**

Congress subsequently amended the TCPA to refer expressly to "a call made or a text message sent" in violation of § 227(b). 47 U.S.C. § 227(i)(1)(A). That language confirms Congress's understanding that the TCPA regulates text messages. It does not establish that Congress intended, by amending provisions directed to an entirely different subject, to silently narrow § 227(c)(5)'s preexisting private right of action. Specifically, when Congress amended the TCPA in 2019 with the TRACED Act, it adopted the FCC's interpretation, instructing the FCC to prescribe regulations related to "a call made or a text message sent in violation of [§ 227(b)]." 47 U.S.C. § 227(i)(1)(A) (emphasis added). "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009). "Where, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' we cannot but deem that construction virtually conclusive."

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986). When Congress amended the TCPA in 2019, it was aware that the FCC and every court had interpreted the statute to cover text messages, and it ratified that interpretation with an explicit reference to text messages in the amendment.

Defendant separately argues that Congress's use of the phrase "a call made or a text message sent" in § 227(i)(1)(A) shows that Congress knows how to distinguish calls from texts, and that its failure to use similar language in § 227(c)(5) means the private right of action must exclude texts. That negative-inference argument does not withstand scrutiny. A negative inference of this kind is strongest where the contrasting provisions were enacted or considered together, *see Hamdan v. Rumsfeld*, 548 U.S. 557, 578–80 (2006); *Russello v. United States*, 464 U.S. 16, 23 (1983), and that is not the case here. The 2018 amendments that added "text message" language to the TCPA originated in anti-spoofing legislation directed at fraudulent caller-ID practices, not at the Do Not Call Registry or § 227(c)(5)'s private right of action, and their legislative history contains no indication that Congress considered—let alone intended to narrow—the private right of action when it left § 227(c)(5) unchanged. *See Wilson v. Easy Spirit, LLC*, 2026 U.S. Dist. LEXIS 69059, at *15–22 (D. Conn. Mar. 31, 2026) (rejecting the identical argument after an extensive review of the 2018 amendments' legislative history and concluding that "Congress evinced no purpose or intention as to § 227(c)(5) when it passed the 2018 Amendment"). If anything, Congress's silence cuts the other way: by 2018, courts and the FCC had already uniformly construed § 227(c) to reach text messages, and Congress's decision not to disturb that settled construction when it separately amended other parts of the statute reflects acceptance of it, not rejection. *See Rabbitt v. Rohrman Midwest Motors, Inc.*, No. 25 C 11312, 2026 WL 851279, at *4 (N.D. Ill. Mar. 27, 2026) ("If Congress's inaction in 2018 is to be ascribed any meaning, the

court interprets it as an acceptance of the existing case law and regulations that applied § 227(c) to text messages.”).

**E. Even if the statute left room to doubt that a text message can be a "call," the FCC's longstanding interpretation should carry the day.**

Since 2003, the FCC has held that text messages constitute calls within the meaning of the TCPA. 18 F.C.C. Rcd. 14014, 14115 (2003) (defining telemarketing calls to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls"). To be sure, mere ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024) (overruling *Chevron*). But courts still defer when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term" or tasks an agency "to fill up the details of a statutory scheme." *Id.* at 395. Section 227(c) is such an express delegation of rulemaking authority, directing the FCC to adopt rules "most effective and efficient to accomplish the purposes" of the Act. 47 U.S.C. § 227(c)(1)(E). Because Congress empowered the FCC to decide how to apply the statutory terms "call" and "telephone solicitation" to specific facts, the FCC's interpretation is entitled to "deferential review." *Loper Bright*, 603 U.S. at 388. This Court should therefore give weight to their interpretation.

Defendant separately argues that paragraph 165 of the FCC’s 2003 Order, cited above, addressed only the ATDS and prerecorded-message restrictions of § 227(b)—not the Do Not Call List provisions of § 227(c)—and that the brief’s reliance on that paragraph is therefore misplaced. Whatever the force of that argument as to paragraph 165 itself, it does not change the outcome, because the same 2003 Order that contains paragraph 165 also promulgated the regulation now codified, as amended, at 47 C.F.R. § 64.1200(e), which independently and explicitly resolves the

question: "The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'" 47 C.F.R. § 64.1200(e) (as amended). By its own terms, Section 64.1200(e) extends the Do Not Call List rules of subsections (c) and (d)—the very regulations whose violation § 227(c)(5) makes actionable—to text messages sent to wireless telephone numbers. Defendant's proposed limitation of paragraph 165 to § 227(b) therefore cannot alter the plain text of the regulation the 2003 Order itself created and that governs this case.

Nor does *Alexander v. Sandoval*, 532 U.S. 275 (2001), assist defendant. *Sandoval* holds that an agency regulation cannot itself create a private right of action that Congress did not authorize. *See id.* at 291. But that is not what has occurred here. Congress—not the FCC—created the private right of action in § 227(c)(5), which expressly authorizes suit by any person who has received more than one "telephone call" "in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). The FCC's regulations, including 47 C.F.R. § 64.1200(c) and (e), supply the substantive standard for what conduct violates the Do Not Call List rules; they do not create the cause of action itself, which Congress supplied directly in the statute. A regulation may invoke a private right of action Congress created, even though it may not create one Congress did not authorize—and that is precisely what the FCC's text-message regulations do here: they invoke, through their own terms, the private right of action Congress already placed in § 227(c)(5). Because Congress, not the agency, is the source of Plaintiff's cause of action, *Sandoval* poses no obstacle to relief.

Even setting the FCC's regulations aside, its interpretation of a text message as a "call" is not at odds with the statute, but simply reflects the dictionary meaning of the word discussed above. *See supra* Part I.A. Moreover, "[b]oth the FCC and the courts have recognized that the scope of the TCPA naturally evolves in parallel with telecommunications technology as it evolves, e.g., with the advent of text messages." *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018). Excluding text messages from the TCPA's protections also ignores that "the TCPA is a remedial statute" that "should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). The outcome BarkBox requests—allowing companies to send unwanted marketing text messages to numbers on the National Do Not Call Registry with impunity—would produce exactly that harm.

**F. The Second Circuit and courts within it have overwhelmingly held that text messages are "calls" under the TCPA.**

Consistent with the statute's text and structure, courts—particularly within the Second Circuit—have overwhelmingly held that text messages qualify as calls under the TCPA. This starts with the Second Circuit itself. First, in *Melito v. Experian Mktg. Solutions, Inc.*, the court explained: "The TCPA delegated the authority to implement these requirements to the Federal Communications Commission (the 'FCC'). *See* 47 U.S.C. § 227(b)(2). Although text messages are not explicitly covered under the TCPA, the FCC has interpreted the Act to cover them. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (July 3, 2003); *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016) ('A text message to a cellular telephone, it is undisputed, qualifies as a "call" within the compass of § 227(b)(1)(A)(iii).')" 923 F.3d 85, 88–89 (2d Cir. 2019).

Second, *Duran v. La Boom Disco, Inc.* continued: "It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a "call" within the compass of [the TCPA].' *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016). Moreover, an unwanted text message is, for standing purposes, an injury-in-fact. *See Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (noting that 'text messages, while different in some respects from the receipt of calls or faxes specifically mentioned in the TCPA, present the same "nuisance and privacy invasion" envisioned by Congress when it enacted the TCPA')." 955 F.3d 279, 280 (2d Cir. 2020).

To be clear, the fact that the Second Circuit in *Melito* and *Duran* relied in part on the FCC's interpretation does not diminish the continuing force of those decisions. Those cases rested on the statutory text and Supreme Court precedent, and the FCC's interpretation was cited as additional support. Post-*Loper Bright*, that structure remains entirely sound: courts first look to the statute, then confirm with agency expertise where Congress has expressly delegated implementation authority. *See Loper Bright*, 603 U.S. at 395.

Defendant's attempt to distinguish *Melito* and *Duran* on the ground that both cases addressed § 227(b) rather than § 227(c)(5), and merely assumed rather than decided that a text message is a "call," does not withstand scrutiny. Other courts confronting that identical argument have rejected it. In *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025), Judge Engelmayer of this District held that "text messages, while different in some respects from the receipt of calls or faxes specifically mentioned in the TCPA, present the same 'nuisance and privacy invasion' envisioned by Congress when it enacted the TCPA," *id.* at *5 (quoting *Melito*, 923 F.3d at 88), and concluded that "limiting § 227(c)'s reach to telephone voice calls while § 227(b) covers voice as well as text messages would create an irrational asymmetry at odds with the statute's text and structure." *Id.* Judge Russell reached the

same conclusion in *Wilson v. Easy Spirit, LLC*, 2026 U.S. Dist. LEXIS 69059 (D. Conn. Mar. 31, 2026), explaining that the contemporary ordinary meaning of "call" is "not limited to a voice call," and that a text message, like a voice call, is sent "to 'get or try to get into communication'" with another person using a telephone. *Id.* at *14 (citation omitted). Neither decision treated *Melito*'s or *Duran*'s discussion of text messages as dicta or as confined to § 227(b); both treated that reasoning as controlling the identical question presented under § 227(c)(5), and this Court should do the same.

District Courts in this Circuit have treated text messages as calls under the TCPA. *See Melito v. Am. Eagle Outfitters, Inc.*, No. 14 CV 02440, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) ("The plain language of section 227(b)(1)(A)(iii) imposes liability upon persons that 'make' a telephone call or text."); *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015)). "Courts have consistently recognized that a text message constitutes a call within the meaning of the statute. *See, e.g.*, *Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 474 (S.D.N.Y. 2018); *Metten v. Town Sports Int'l, LLC*, No. 18-CV-4226 (ALC), 2019 WL 1299939, at *2 (S.D.N.Y. Mar. 21, 2019)." *Bank v. Simple Health Plans LLC*, 2019 U.S. Dist. LEXIS 215228, at *13 (E.D.N.Y. 2019).

The Second Circuit and district courts within it have spoken with one voice: text messages qualify as "calls" under the TCPA and are subject to the same restrictions as voice solicitations. BarkBox's contrary position, resting on out-of-Circuit authority such as *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026), and its predecessor decisions, cannot be squared with this Circuit's precedent, and this Court should follow the Second Circuit rather than create a split within it. Excluding texts from the Registry would nullify Congress's protections and allow

telemarketers to exploit the dominant form of telemarketing communication today. The Registry continues to protect numbers, not loopholes.

**G. The Seventh Circuit's Nonbinding Decision in *Steidinger* Should Not Be Followed.**

BarkBox principally relies on *Steidinger v. Blackstone Medical Services*, 182 F.4th 532 (7th Cir. 2026), which held that § 227(c)(5) does not extend to unwanted text messages. *Steidinger* is not binding in this Circuit, and its reasoning is inconsistent with the TCPA's statutory and regulatory framework, the Second Circuit's treatment of texts under the TCPA, and persuasive decisions within this Circuit.

*Steidinger* placed dispositive weight on § 227(a)(4)'s reference to a "telephone call or message," reasoning that "telephone call" in § 227(c)(5) must exclude every written communication. *Id.* at 537–38. But the ordinary meaning of "call" includes an attempt to communicate by telephone, and courts have long applied that term to text messages under the TCPA. *See*, *e.g.*, *Melito*, 923 F.3d at 88–89; *Howard*, 164 F.4th at 1123–24. The phrase "call or message" can describe overlapping forms of telephone communication without establishing that a message transmitted to a telephone number can never constitute a call. Moreover, *Steidinger* separates § 227(c)(5)'s private right of action from the regulations Congress expressly made enforceable through that provision. Section 227(c)(5) authorizes suit for repeated calls made "in violation of the regulations prescribed under this subsection." Those regulations prohibit solicitations to numbers on the National Do Not Call Registry and expressly apply the subsection (c) rules to "telemarketing calls or text messages to wireless telephone numbers." 47 C.F.R. §§ 64.1200(c)(2), (e). It would be anomalous to conclude that Congress authorized the FCC to prohibit telemarketing texts under § 227(c), and created a private remedy for repeated violations

of the resulting regulations, but silently withheld that remedy whenever the unlawful solicitation was transmitted by text rather than sound.

Although the Second Circuit has not decided this precise § 227(c)(5) question, its TCPA decisions recognize that text messages constitute calls and cause the same "nuisance and privacy invasion" that Congress sought to prevent. *Melito*, 923 F.3d at 88–89. Courts within this Circuit addressing § 227(c)(5) specifically have likewise rejected the narrow construction adopted in Steidinger. *See*, *e.g.*, *Wilson*, 2025 WL 3493815, at *5. This conclusion does not require treating the FCC's interpretation as controlling. Rather, the statute, the regulations it expressly incorporates, the Second Circuit's treatment of text messages, and the persuasive authority within this Circuit all support treating repeated telemarketing texts as actionable under § 227(c)(5). The Court should therefore decline to follow *Steidinger*.

**II. Section 227(c)'s Do Not Call Registry Protections Extend to Cellular Numbers Used for Personal and Residential Purposes.**

BarkBox's second argument—that § 227(c) protects only landline "residential" telephones and can never reach a cellular number—fares no better. The FCC decided this question when it first created the Do Not Call List rules more than two decades ago, and courts, including this one, have overwhelmingly agreed with the agency's conclusion ever since.

The statutory grammar confirms that distinction. Section 227(c) protects a "residential telephone subscriber"; it does not limit its protection to a "residential telephone line." As courts have explained, the best reading is that "residential" and "telephone" both modify "subscriber," thereby distinguishing a person who subscribes to telephone service for residential or personal purposes from one who subscribes for business or commercial purposes. *Jackson v. Direct Building Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024).

Congress demonstrated elsewhere in the TCPA that it knew how to regulate a particular type of telephone line when it wished to do so. Its decision to protect a type of subscriber in § 227(c), rather than a particular telephone technology, forecloses BarkBox's proposed categorical exclusion of cellular subscribers.

When the FCC established the National Do Not Call Registry in 2003, it specifically considered—and rejected—the argument that "residential telephone subscribers" excludes consumers who use a wireless telephone in the same manner as a traditional landline. *See* 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36 (2003). The FCC's regulations accordingly make the Registry's protections available to "residential telephone subscriber[s]" without regard to whether the underlying number is a landline or a cell phone. *See* 47 C.F.R. §§ 64.1200(c)(2), (e). Courts have overwhelmingly agreed with that construction ever since. *See, e.g.*, *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

*Cacho* is particularly instructive, because it is a decision of this District squarely addressing the very argument BarkBox raises here. As BarkBox's own motion acknowledges, *Cacho* held that "a cell phone user may qualify as a 'residential telephone subscriber' if the phone is used for personal or household purposes," reasoning that "'residential' modifies 'subscriber' and therefore refers to the kind of person protected, rather than the service used." Mot. at 13–14 (citing *Cacho*, 739 F. Supp. 3d at 204–07). That reading follows directly from the statute's stated purpose: the Do Not Call List exists "to protect residential telephone subscribers' privacy rights," 47 U.S.C. § 227(c)(1)—that is, to protect the privacy of subscribers in their homes and personal lives, not to draw an arbitrary technological line between landlines and the cell phones that have, for most Americans, functionally replaced them. Over 200 million phone subscribers rely on the Registry's

protections today. *Cacho*, 739 F. Supp. 3d at 203–204 & n.5. Adopting BarkBox's cramped reading would strip protection from the vast majority of them, since landline telephone subscriptions have become the exception rather than the rule in American households.

Plaintiff's allegations place him squarely within *Cacho*'s and the FCC's construction. Plaintiff alleges that he has no landline telephone number in his home, and that he uses his cellular number "for personal use only," in the same manner "as one would use a landline telephone number in a home"—to communicate with friends and family, schedule personal appointments, and for other household purposes. Compl. ¶¶ 12–14. He does not use, and never has used, the number for any business or commercial purpose. *Id.* ¶¶ 10–11. Those allegations are precisely the kind of personal, household cellular use that the FCC and the weight of authority hold brings a subscriber within § 227(c)'s protection.

BarkBox's dictionary-based argument that "residential" can only describe a landline located in a fixed dwelling proves too much. The FCC—the agency Congress charged with implementing § 227(c) and administering the Registry—reached the opposite conclusion at the very moment it built the Registry, extending its protections to wireless subscribers using their phones for personal and household purposes. 18 FCC Rcd. at 14037–39 ¶¶ 33–36. That contemporaneous administrative construction, offered by the agency "appointed to carry [the TCPA's] provisions into effect," is "entitled to very great respect," particularly where, as here, Congress has never disturbed it in more than two decades of subsequent amendments to the statute. *Cf. Loper Bright*, 603 U.S. at 386. And it is consistent with the same statutory purpose discussed in Part I above: Congress sought "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1), a privacy

interest that Plaintiff holds in his personal cellular number no less than a homeowner holds in a landline.

A recent decision within the Second Circuit confirms *Cacho*'s reasoning and rejects the precise categorical argument BarkBox advances here. In *Wilson v. Easy Spirit, LLC*, the District of Connecticut denied a motion to dismiss a § 227(c)(5) claim after independently analyzing whether a person using a cellular telephone for household purposes qualifies as a "residential telephone subscriber." No. 3:25-CV-112 (SFR), 2026 U.S. Dist. LEXIS 69059, at *7–10 (D. Conn. Mar. 31, 2026). The plaintiff there alleged, just as Plaintiff does here, that he had no residential landline, used his cellular number for personal purposes as one would use a home telephone, and received no business reimbursement for the telephone plan. *Id.* at *7–8. The court held that those allegations described a residential subscriber because "'residential' modifies 'subscriber'" and therefore identifies the kind of subscriber Congress protected, "rather than . . . a particular type of phone technology." *Id.* at *9–10 (quoting *Isaacs v. USHealth Advisors, LLC*, No. 3:24-cv-00216-LMM, 2025 U.S. Dist. LEXIS 152625, at *7–9 (N.D. Ga. Aug. 7, 2025)). The Court further emphasized that "the plain language of the statute does not, at any point, equate 'residential telephone' with 'landline.'" *Id.* at *10. It accordingly joined the numerous courts holding that a residential subscriber may include a person who uses a cellular telephone for personal and household purposes. *Id.*

The contrary interpretation would also produce an arbitrary result that conflicts with § 227(c)'s express privacy purpose. The intrusion into a subscriber's private and domestic life does not disappear merely because the solicitation reaches the subscriber's personal cellular telephone instead of a copper-wire landline. As *Isaacs* explained, BarkBox's interpretation would protect a landline subscriber but deny protection to a person whose cellular telephone is the sole telephone

used in the home, thereby tying Congress's protection of residential privacy to "an obsolete and disappearing phone technology." 2025 U.S. Dist. LEXIS 152625, at *8–9. *Easy Spirit*, applying *Isaacs* within the Second Circuit, found that reasoning persuasive and concluded that a residential subscriber is one who maintains telephone service for activities associated with the subscriber's "private, domestic life." 2026 U.S. Dist. LEXIS 69059, at *9–10. Plaintiff's allegations fall squarely within that definition.

Consistent with *Cacho*, *Easy Spirit*, and the substantial weight of authority, the Court should hold that § 227(c) protects a subscriber who uses a cellular telephone for personal, residential, and household purposes. Plaintiff alleges that he has no landline, uses his cellular number exclusively for personal and household communications, has never used it for business or commercial purposes, and has maintained the number on the National Do Not Call Registry since 2009. Compl. ¶¶ 9–15. Those allegations do not merely permit an inference of residential use; they directly allege the same facts *Easy Spirit* held sufficient to establish residential-subscriber status. 2026 U.S. Dist. LEXIS 69059, at *7–10. BarkBox's motion should therefore be denied.

**Conclusion**

For all of the foregoing reasons, BarkBox's motion for judgment on the pleadings should be denied in its entirety. The TCPA's text, structure, purpose, and Second Circuit precedent, persuasive decisions within this District and the FCC's implementing regulations all confirm that text messages qualify as "telephone calls" under § 227(c), and that the "residential telephone subscribers" protected by that provision include cellular subscribers, like Plaintiff, who use their numbers for personal and household purposes. BarkBox's contrary interpretation rests on atextual limitations and out-of-Circuit authority that has been repeatedly rejected by courts in this Circuit and elsewhere.

Date: September 7, 2026

*/s/ Anthony I. Paronich*
Anthony I. Paronich, *Pro Hac Vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Phone: (508) 221-1510
Fax: (508) 318-8100
anthony@paronichlaw.com

*Counsel for Plaintiff and the proposed class*

**CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMIT**

Pursuant to Local Civil Rule 7.1(c) and Rule III.D of the Court's Individual Practices in Civil Cases, I, Anthony I. Paronich, certify that the foregoing memorandum of law contains 6,855 words, excluding the caption, table of contents, table of authorities, signature block, and this certificate. In preparing this certification, I relied on the word-count function of Microsoft Word.

Dated: September 7, 2026

*/s/ Anthony I. Paronich*
Anthony I. Paronich