UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ADAM STEUER, individually and on behalf of all others similarly situated, Plaintiff, | : | Civil Action No. 1:26-cv-02038-AT |
| v. | : | CLASS ACTION |
| BARKBOX, INC., Defendant. | : | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

INTRODUCTION ........ 1
ARGUMENT ........ 1
I. Section 227(c)(5) Does Not Apply to Text Messages. ........ 1
A. The Plain Meaning of "Telephone Call" Does Not Include Text Messages. ........ 1
B. The Structure and Purpose of the TCPA Confirm That "Telephone Calls" Do Not Include Text Messages. ........ 4
C. The FCC Cannot Alter the Scope of Congress's Private Right of Action. ........ 6
D. The Second Circuit Has Not Addressed Whether Section 227(c)(5) Applies to Text Messages. ........ 8
II. Section 227(c) Does Not Apply to Cellular Telephones. ........ 9
CONCLUSION ........ 11

## TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Ankrah v. Streamline Funding, LLC*,
No. 1:26-CV-00784-JPB, 2026 WL 3027138 (N.D. Ga. Sept. 29, 2026) ....2

*Anthony v. Brian Mktg. Grp.*,
No. 24-80800-CIV, 2026 WL 2685650 (S.D. Fla. Sept. 11, 2026) ....9, 11

*BedRoc Ltd., LLC v. United States*,
541 U.S. 176 (2004) ....11

*Brown v. Hursh Grp., LLC*,
No. 26-CV-00185-NRN, 2026 WL 2906613 (D. Colo. Sept. 28, 2026) ....2

*Cacho v. McCarthy & Kelly LLP*,
739 F. Supp. 3d 195 (S.D.N.Y. 2024) ....10

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ....7

*Card v. R.J. Reynolds Tobacco Holdings, Inc.*,
No. 1:26-CV-433, 2026 WL 2673068 (M.D.N.C. Sept. 3, 2026) ....2, 3, 4

*Conrad v. Hart Consumer Prods.*,
No. 4:24-CV-307-CLM, 2026 WL 2741623 (N.D. Ala. Sept. 16, 2026) ....2

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025) ....2, 7

*Duran v. La Boom Disco, Inc.*,
955 F.3d 279 (2d Cir. 2020) ....3

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021) ....5

*Howard v. Republican Nat'l Comm.*,
164 F.4th 1119 (9th Cir. 2026) ....3

*James v. Smarter Contact, Inc.*,
828 F. Supp. 3d 1367 (M.D. Fla. 2026) ....3, 5, 8

*Koeller v. Ox AppsecSec., Inc.*,
No. 4:25-CV-0641-MTS, 2026 WL 2935851 (E.D. Mo. Sept. 30, 2026) ....9, 11

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ....2, 6, 7, 8

*McGonigle v. Pure Green Franchise Corp.*,
No. 25-61164-CIV, 2026 WL 111338 (S.D. Fla. Jan. 15, 2026)....7

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025)....7, 9

*Melito v. Experian Mktg. Sols., Inc.*,
923 F.3d 85 (2d Cir. 2019)....3

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
583 U.S. 109 (2018)....3

*Oklahoma v. Castro-Huerta*,
597 U.S. 629 (2022)....10

*Phillips v. Gjd Stars Inc.*,
No. 26-61910-CIV, 2026 WL 3060556 (S.D. Fla. Sept. 18, 2026)....2

*Radvansky v. Kendo Holdings, Inc.*,
No. 3:23-CV-00214-LMM, 2026 WL 810929 (N.D. Ga. Feb. 12, 2026)....5, 8

*Radvansky v. 1st Class Med.*,
No. 25-CV-03796-PAB-STV, 2026 WL 2858562 (D. Colo. Sept. 23, 2026)....2

*Rush v. Selectquote Ins. Servs., Inc.*,
No. 6:26-CV-03157-MBB, 2026 WL 2495598 (W.D. Mo. July 30, 2026)....2, 6, 8

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009)....3, 6

*Sayed v. Naturopathica Holistic Health, Inc.*,
No. 8:25-CV-00846-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025)....5

*Steidinger v. Blackstone Med. Servs.*,
182 F.4th 532 (7th Cir. 2026)....*passim*

*Stockdale v. Skymount Prop. Grp., LLC*,
825 F. Supp. 3d 622 (N.D. Ohio 2026)....8

*Warciak v. Subway Rests., Inc.*,
949 F.3d 354 (7th Cir. 2020)....3

*Wilson v. Better Mortgage Corp.*,
811 F. Supp. 3d 631 (S.D.N.Y. 2025)....8

*Wilson v. Easy Spirit, LLC*,
No. 3:25-CV-112, 2026 WL 884170 (D. Conn. Mar. 31, 2026)....8, 10

**Statutes and Regulations**

Telephone Consumer Protection Act, 47 U.S.C. § 227 ........................................................ *passim*

47 C.F.R. § 64.1200(e).......................................................................................................6

**Other Authorities**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
18 F.C.C. Rcd. 14014 (F.C.C. 2003) ..........................................................................10

## INTRODUCTION[1]

This case presents two straightforward questions of statutory interpretation, each of which provides an independent basis for dismissal. First, does the TCPA's private right of action for a recipient of an unwanted "telephone call," 47 U.S.C. § 227(c)(5), include text messages? Second, does the TCPA's prohibition on unwanted telephone calls to "residential telephone subscribers," 47 U.S.C. § 227(c)(1), include cellular telephones? The answer to both questions is no.

Plaintiff's Opposition, Dkt. 27, does not meaningfully grapple with these questions or the numerous authorities answering them in the negative—including several more issued in the last few weeks. Instead, Plaintiff relies on authority interpreting Section 227(b)—which is not at issue here—and invokes outdated FCC interpretations in an attempt to expand the TCPA's private right of action. These misguided arguments cannot overcome the statutory text. Because his claim is based entirely on text messages sent to his cell phone, this Court should find that the TCPA does not apply, grant Bark's motion for judgment on the pleadings, and dismiss Plaintiff's Complaint.

## ARGUMENT

### I. Section 227(c)(5) Does Not Apply to Text Messages.

#### A. The Plain Meaning of "Telephone Call" Does Not Include Text Messages.

Section 227(c)(5) affords a private right of action only to "[a] person who has received more than one ***telephone call*** within any 12-month period . . ." 47 U.S.C. § 227(c)(5) (emphasis added). The Court's analysis begins and ends with the ordinary meaning of that phrase.

Plaintiff does not dispute that text messages did not exist when Congress enacted the TCPA in 1991. Thus, Congress could not have understood "telephone call" to encompass text messages.

[1] Abbreviations have the same meaning as Bark's Motion for Judgment on the Pleadings (Dkt. 26) and all internal quotations and citations are omitted. Citations to filed documents are to the page numbers in the Court's ECF stamp.

The meaning of "telephone call" has not changed over the last three decades simply because new forms of communication have emerged. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("every statute's meaning is fixed at the time of enactment"). Whether in 1991 or 2026, "no ordinary person would think of a text message as a '*telephone* call.'" *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025).

Contemporary dictionary definitions confirm this ordinary understanding. *Steidinger v. Blackstone Med. Servs*., 182 F.4th 532, 535–36 (7th Cir. 2026). In short, this Court should join the growing number of courts (even since Bark's initial Motion was filed) holding that the meaning of "telephone call" in Section 227(c)(5) does not include text messages and dismissing complaints making near-identical allegations. *See* Dkt. 26 at 10–11 (citing numerous cases); *see also*, *e.g., Ankrah v. Streamline Funding, LLC*, No. 1:26-CV-00784-JPB, 2026 WL 3027138, at *2–3 (N.D. Ga. Sept. 29, 2026); *Brown v. Hursh Grp., LLC*, No. 26-CV-00185-NRN, 2026 WL 2906613, at *2–3 (D. Colo. Sept. 28, 2026); *Radvansky v. 1st Class Med.*, No. 25-CV-03796-PAB-STV, 2026 WL 2858562, at *2–3 (D. Colo. Sept. 23, 2026); *Phillips v. Gjd Stars Inc.*, No. 26-61910-CIV, 2026 WL 3060556, at *5 (S.D. Fla. Sept. 18, 2026); *Conrad v. Hart Consumer Prods.*, No. 4:24-CV-307-CLM, 2026 WL 2741623, at *11–13 (N.D. Ala. Sept. 16, 2026); *Card v. R.J. Reynolds Tobacco Holdings, Inc*., No. 1:26-CV-433, 2026 WL 2673068, at *2 (M.D.N.C. Sept. 3, 2026); *Rush v. Selectquote Ins. Servs., Inc*., No. 6:26-CV-03157-MBB, 2026 WL 2495598, at *2–4 (W.D. Mo. July 30, 2026).

Unable to overcome the plain meaning of "telephone call," Plaintiff claims that courts have "long recognized" that the TCPA applies to text messages. *See* Dkt. 27 at 7, 10. But unlike the numerous Section 227(c)(5) cases directly rejecting Plaintiff's argument, which he conspicuously ignores, the cases Plaintiff cites concerned a different statutory provision, Section 227(b), which pertains to "*any* calls," not the narrower "*telephone* call[s]" governed by Section 227(c)(5).

*See, e.g.*, *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1122–24 (9th Cir. 2026) (omitting any discussion of Section 227(c)); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 88–89 (2d Cir. 2019) (same); *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 950, 952–54 (9th Cir. 2009); *see also, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020), *judgment vacated*, 141 S. Ct. 2509 (2021). As several courts construing Section 227(c)(5) have explained (in cases Plaintiff failed to address), the modifier "telephone" in Section 227(c)(5) refers to communications involving transmission of sounds over a distance, not written text, which makes constructions of Section 227(b) inapplicable. *See, e.g.*, *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1371–73 (M.D. Fla. 2026). Courts must give effect to the "telephone" modifier. *See Steidinger*, 182 F.4th at 537–39 (declining to apply the reasoning of *Melito*, *Howard*, and *Warciak* to Section 227(c)(5) because "there is a difference in language" in subsections (b) and (c) that "explains and supports [a] conclusion that § 227(c)(5) does not apply to text messages").

Plaintiff argues that giving independent meaning to "telephone" is "redundan[t]." Dkt. 27 at 14–15. But courts are "obliged to give effect" to every word Congress enacted and cannot read "telephone" out of the statute. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 128–29 (2018). Here, "telephone" has a distinct definition separate from "call." *Card*, 2026 WL 2673068, at *2 (rejecting argument that a "text message is a 'call' because it is a form of communication between telephones" because this conclusion "isolates the word 'call' . . . without taking into account that the statutory language at issue is a 'telephone call'"). Plaintiff's interpretation also lacks a limiting principle—under his view, a "telephone call" encompasses *any* communication received through a telephone device, including emails and push notifications from applications. Nothing in the ordinary meaning of "telephone call" supports such a boundless reading. Plaintiff also contends that if Congress intended to exclude texts, it would have used "voice call" rather

than "telephone call." *See* Dkt. 27 at 14–15. That Congress could have chosen different words does not permit the Court to ignore the words Congress actually used. *Card*, 2026 WL 2673068, at *3.

Because Congress authorized suits only for unwanted "telephone call[s]," and a text message is not a call, Plaintiff's claim is outside the scope of § 227(c)(5)'s private right of action.

### B. The Structure and Purpose of the TCPA Confirm That "Telephone Calls" Do Not Include Text Messages.

The broader statutory context reinforces what the plain language makes clear: Section 227(c)(5) applies to telephone calls, not text messages. The other TCPA provisions on which Plaintiff relies demonstrate that Congress distinguished between calls and messages throughout the TCPA and did not include messages within Section 227(c)(5).

Plaintiff contends the use of "telephone solicitation" in Section 227(c)(3)(F)—the subdivision describing the FCC's regulatory authority—illustrates that the TCPA applies to text messages. Dkt. 27 at 8, 11–12. This argument defeats, rather than supports, Plaintiff's position. The TCPA defines "telephone solicitation" as the "initiation of a telephone call ***or message***." 47 U.S.C. § 227(a)(4) (emphasis added). But, again, the provision at issue in this case is Section 227(c)(5). *See* Dkt. 1 ¶¶ 2, 38, 39 (citing Section 227(c)(5) as the basis for relief). Section 227(c)(5) does not authorize suit for the receipt of a "telephone solicitation"; it authorizes suit only for receipt of more than one "***telephone call***." 47 U.S.C. § 227(c)(5) (emphasis added). If "telephone call" already encompassed messages, Congress would have had no reason to define a "telephone solicitation" as the initiation of a "telephone call *or* message." *Steidinger*, 182 F.4th at 536. Congress's decision to use "telephone call" in Section 227(c)(5) and "telephone solicitation" in Section 227(c)(3)(F) demonstrates that the terms have separate meanings and that Section 227(c)(5) does not encompass text messages.

Plaintiff's reliance on subsequent amendments of other sections of the TCPA is similarly misguided. He argues that when Congress amended the TCPA in 2019 "every court had interpreted the statute to cover text messages" and thus there was no need to amend Section 227(c) to expressly include text messages. *See* Dkt. 27 at 16. Congress amended Section 227(e) to alter the definition of "caller identification," now defined as information about the source of "a call made using a voice service *or* a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A). Were Plaintiff's boundless view correct—that a call encompasses *any* communication received on a telephone—there would have been no reason for Congress to separately address text messages in this amendment.[2] *James*, 828 F. Supp. 3d at 1372; *Radvansky v. Kendo Holdings, Inc*., No. 3:23-CV-00214-LMM, 2026 WL 810929, at *3 (N.D. Ga. Feb. 12, 2026); *Sayed v. Naturopathica Holistic Health, Inc*., No. 8:25-CV-00846-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025).

Because the statutory text forecloses Plaintiff's reading, he resorts to arguing policy considerations. Dkt. 27 at 12, 19. But the Supreme Court has made clear that the TCPA's remedial nature "cannot overcome the clear commands of" the "text and the statutory context." *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 406 (2021). In fact, Congress's concern about intrusive telemarketing weighs against an expansive definition of "telephone call." As *Steidinger* explained, "Congress specifically found that telemarketing calls create a public safety risk when they seize telephone lines needed for emergency or medical assistance. Spam text messages don't pose this risk." 182 F.4th at 540. It is "unsurprising, or at the very least reasonable, that § 227(c)(5)'s private

[2] Moreover, Plaintiff does not cite a single pre-2019 case holding that Section 227(c) applies to text messages. Instead, he relies almost exclusively on cases interpreting "any call" in subsection (b), which as explained above, does not inform the meaning of "telephone call" in subsection (c).

right of action would cover telephone calls but not messages." *Id*. Not even Plaintiff's perceived policy goals justify departing from the statute's plain meaning.

**C. The FCC Cannot Alter the Scope of Congress's Private Right of Action.**

Recognizing the statutory text does not include his claims, Plaintiff turns to the FCC's regulations and interpretations. Neither provides a basis for extending Section 227(c)(5)'s private right of action beyond the limits Congress set.

First, Plaintiff argues that because the FCC extended the "do not call" regulations to text messages through 47 C.F.R. § 64.1200(e) and because Section 227(c)(5) creates a private right of action for violations of the regulations, "telephone call" must likewise encompass text messages. Dkt. 27 at 13. Plaintiff's reasoning is backwards. Congress, through the text of the statute, defines the scope of the private right of action, not the FCC. And while Congress may define a private remedy more narrowly than an agency's regulatory authority—as it often does, *see* Dkt. 26 at 15–16—an agency cannot expand its regulatory authority under the guise of implementing the statute. To hold otherwise would violate separation of powers. *Loper Bright*, 603 U.S. at 394–96. Plaintiff responds that there is no separation of powers issue here because the regulations do not "create" a cause of action but merely provide "the substantive standard." Dkt. 27 at 18. That is a distinction without a difference. Where Congress limited the private right of action to recipients of unwanted telephone calls, a regulation extending liability to text messages necessarily enlarges actionable claims beyond those Congress authorized. *See Rush*, 2026 WL 2495598, at *3.

Also incorrect is Plaintiff's fallback argument that statutory *stare decisis* "preserve[s]" the *Chevron*-era decisions, like *Satterfield*, concluding that the FCC's atextual expansion of Section 227(c)(5) via the DNC regulations is lawful. *See* Dkt. 27 at 13–14. First, neither *Satterfield* nor any other case Plaintiff cites concerns Section 227(c)(5) and so has no bearing on the interpretation question at issue here. Second, even if the older precedents were relevant, statutory *stare decisis*

prevents a court from overruling its *own* prior precedent merely because it relied on *Chevron*; it does not transform an agency pronouncement into judicial precedent. Neither the U.S. Supreme Court nor the Second Circuit has held that a text message is a "telephone call" under Section 227(c)(5). At most, *Campbell-Ewald Co. v. Gomez*, noted the point was "undisputed" by those parties, which is insufficient to invoke statutory *stare decisis*. 577 U.S. 153, 156 (2016). Under *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, this Court must construe the statute independently and decisions that simply deferred to the FCC carry no *stare decisis* weight here. 606 U.S. 146, 168 (2025).

Next, Plaintiff contends that the FCC's 2003 Order is entitled to "deferential review" under *Loper Bright*. *See* Dkt. 27 at 17. That argument ignores *Loper Bright*'s central holding: that courts, not agencies, must decide questions of statutory interpretation. 603 U.S. at 396 ("The deference that *Chevron* requires of courts reviewing agency action cannot be squared with the APA."). Courts applying *Loper Bright* have thus repeatedly rejected attempts to use FCC guidance to expand the TCPA beyond its text. *See Davis*, 797 F. Supp. 3d at 1275; *cf. McGonigle v. Pure Green Franchise Corp*., No. 25-61164-CIV, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026).

Plaintiff's reliance on two isolated passages from *Loper Bright* does not change this conclusion. Plaintiff first claims that the FCC's interpretation is entitled to "deferential review" "[b]ecause Congress empowered the FCC to decide how to apply the statutory terms 'call' and 'telephone solicitation' to specific facts." Dkt. 27 at 17 (citing *Loper Bright*, 603 U.S. at 388). But that passage describes prior decisions in which the Court inconsistently deferred to agencies when resolving fact-bound questions. *Loper Bright* contrasted those cases with questions of statutory interpretation, which remain the judiciary's responsibility. 603 U.S. at 389. The issue here is the meaning of "telephone call" in Section 227(c)(5), a legal question of statutory interpretation, not a fact-bound determination. Second, Plaintiff claims that "courts still defer when a statute

'expressly delegate[s] to an agency the authority to give meaning to a particular statutory term' or tasks an agency 'to fill up the details of a statutory scheme.'" Dkt. 27 at 17 (citing *Loper Bright*, 603 U.S. at 395). The TCPA gives the FCC authority to *implement* the DNC regulations. Nowhere, however, does it give the FCC authority to define "telephone call." *Loper Bright*, 603 U.S. at 395 n.5; *see also Rush*, 2026 WL 2495598, at *3.

In any event, agency interpretations are entitled to respect only "when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Loper Bright*, 603 U.S. at 386, 388, 394. The 2003 Order's alleged interpretation of "call," adopted more than a decade after the TCPA was enacted, is neither "contemporaneous" nor "consistent" with its enactment or the FCC's limited authority under Section 227(c), and thus carries no weight here.

### D. The Second Circuit Has Not Addressed Whether Section 227(c)(5) Applies to Text Messages.

Plaintiff concedes, as he must, that the Second Circuit has not addressed the question presented here. Dkt. 27 at 23. Unable to identify binding authority, Plaintiff relies on just two district court orders to support his view: *Wilson v. Better Mortgage Corp*., 811 F. Supp. 3d 631 (S.D.N.Y. 2025), and *Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112, 2026 WL 884170 (D. Conn. Mar. 31, 2026). But those decisions commit the same analytical error as Plaintiff—they ignore the modifier "telephone." *Better Mortgage*, 811 F. Supp. 3d at 637; *Easy Spirit*, 2026 WL 884170, at *5. Numerous courts have recognized that flaw and thus expressly declined to follow their reasoning. *See, e.g.*, *Stockdale v. Skymount Prop. Grp., LLC*, 825 F. Supp. 3d 622, 625–26 n.5 (N.D. Ohio 2026); *James*, 828 F. Supp. 3d at 1371–73; *Radvansky*, 2026 WL 810929, at *3. Plaintiff's remaining authorities fare no better since they all interpret Section 227(b); none considered the meaning of "telephone call" in Section 227(c)(5), much less held that text messages

fall within that narrower statutory term. *See* Dkt. 27 at 20–23. By contrast, *Steidinger* is the only circuit court decision to squarely address the issue. 182 F.4th at 534–36. This Court should follow it and hold that Plaintiff's claim based on unwanted text messages falls outside Section 227(c)(5).

**II. Section 227(c) Does Not Apply to Cellular Telephones.**

Plaintiff asks this Court to hold that a "residential telephone subscriber" is any person who uses a phone for personal, non-business purposes. *See* Dkt. 27 at 23–27. Once more, his strained reading ignores the TCPA's clear language and structure.

Plaintiff does not—and cannot—cite any 1991 definition under which a "residential telephone" includes a cell phone. In 1991 "residential" meant "of relating to residence or residences," and a residential telephone was "a telephone connected with a residence." *See* Dkt. 26 at 18. Plaintiff all but ignores this, offering only that Congress sought to protect "subscribers," not a particular type of telephone line. Dkt. 27 at 23–24. But the "mainstream definition of 'subscriber' at the time of enactment was 'an individual having commercial telephone equipment installed on his premises[.]'" *Anthony v. Brian Mktg. Grp.*, No. 24-80800-CIV, 2026 WL 2685650, at *7 (S.D. Fla. Sept. 11, 2026). Thus, "[d]efinitions at the time of the TCPA's enactment suggest that 'residential telephone subscriber,'" "meant a person who pays intermittently to receive telephone services that are connected to his or her home" or "at the very least" several definitions included "language indicating a physical tethering of the service to the residential location." *Id.* Common usage at the time further supports that "residential telephone subscriber" was distinct from "cellular telephone subscriber" and referred to persons who possess landlines. *See Koeller v. Ox AppsecSec., Inc.*, No. 4:25-CV-0641-MTS, 2026 WL 2935851, at *3 (E.D. Mo. Sept. 30, 2026).

Next, Plaintiff argues that this Court should ignore the plain meaning of "residential telephone subscriber" and hold that it includes cellular telephones because the FCC's 2003 Order concluded that it does. Under *McLaughlin*, however, district courts cannot defer to the FCC's

interpretation of the TCPA and must instead interpret it using ordinary principles of statutory interpretation. 606 U.S. at 168. The ordinary meaning of "residential telephone subscriber" does not include cellular telephones, and thus the FCC's 2003 Order, which purports to expand the scope to include "wireless telephone subscribers," exceeds the statute's plain terms. Further, the primary justification for the FCC's "interpretation" was changing technology. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (F.C.C. 2003) (reasoning that "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections"). But an agency's newly discovered application of congressional intent in light of technological change is not a sufficient basis to redefine a statute, much less twelve years after enactment. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) (the Court will "not 'replace the actual text with speculation as to Congress' intent.'").

Finally, Plaintiff points to *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024), and *Easy Spirit* to support his position that cell phones are encompassed in "residential telephone subscriber." But rather than examining how the phrase would have been understood in 1991, *Cacho* and *Easy Spirit* rely on dictionary definitions from 2019 to 2024 and modern cell phone usage patterns. *Cacho*, 739 F. Supp. 3d at 206–07; *Easy Spirit*, 2026 WL 884170 at *3–4. Additionally, *Cacho* and *Easy Spirit* effectively rewrite the statute by treating "residential" as modifying only the subscriber's purpose rather than the telephone service itself. *Cacho*, for example, concludes that a residential subscriber is simply a person who uses a phone "for personal activities associated with his or her private, domestic life." 739 F. Supp. 3d at 206–08. Congress, however, did not protect "persons who use phones for personal purposes"; it protected "residential *telephone* subscribers." The *Cacho* court's interpretation reads the word "telephone" out of the statutory phrase. *See id.*; *Easy Spirit*, 2026 WL 884170 at *3–4. Finally, *Cacho* relied heavily on

policy considerations rather than statutory text. 739 F. Supp. 3d at 203–04, 207–08. But whether extending Section 227(c) to modern technology is good policy is a question for Congress. Courts may not expand statutory language based on perceived legislative purpose. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("our inquiry begins with the statutory text, and ends there as well if the text is unambiguous").

Because "residential telephone subscriber" refers to landlines and home phones, this Court should follow the well-reasoned opinions holding that Section 227(c) does not apply to cellular telephones. *See, e.g.*, *Anthony*, 2026 WL 2685650, at *5–12; *Koeller*, 2026 WL 2935851, at *3.

## CONCLUSION

Bark requests that the Court grant its motion for judgment on the pleadings and dismiss Plaintiff's complaint with prejudice.

Dated: October 16, 2026
Atlanta, Georgia

Respectfully submitted,

*/s/ S. Stewart Haskins II*

S. Stewart Haskins II (*admitted pro hac vice*)
Allexia Bowman Roberts (*admitted pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Fax: (404) 572-5100
shaskins@kslaw.com
roberts@kslaw.com

Kevin J. O'Brien
**KING & SPALDING LLP**
1290 Avenue of the Americas, 14th Floor
New York, New York 10104
Telephone: (212) 556-2100
Fax: (212) 556-2222
kobrien@kslaw.com

*Counsel for Defendant*

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMIT**

Pursuant to L. Civ. R. 7.1(c) and Rule III.D of the Court's Individual Practices in Civil Cases, I, S. Stewart Haskins II, hereby certify that the foregoing Reply Memorandum of Law contains 3,400 words, excluding the caption, table of contents, table of authorities, signature block and this certificate. In preparing this certification, I relied on the word count of Microsoft Word.

Dated: October 16, 2026

*/s/ S. Stewart Haskins II*
S. Stewart Haskins II